# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> DOMINIQUE KYLE JAMES SWAIN, <br><br> Defendant. | Case No. 3:19-cr-00088-SLG |

## ORDER REGARDING MOTION TO SUPPRESS

Before the Court at Docket 19 is defendant Dominique Kyle James Swain's Motion to Suppress. The government responded in opposition at Docket 30. The motion was referred to the Honorable Magistrate Judge Deborah M. Smith, who held an evidentiary hearing on the motion in October 2019.[1] At Docket 41, Judge Smith issued her Initial Report and Recommendation, in which she recommended that the motion be denied. Both Mr. Swain and the government objected to the Initial Report and Recommendation, at Dockets 42 and 44, respectively. Mr. Swain replied to the government's objection at Docket 45; the government replied to Mr. Swain's objection at Docket 46. Judge Smith issued her Final Report and Recommendation at Docket 47, in which she recommended that the motion be granted. This Court directed the parties to file additional briefing regarding a

---

[1] Docket 40.

headlight-use violation as a basis for a traffic stop.[2]  Mr. Swain filed his supplemental briefing at Docket 51; the government filed its supplemental briefing at Docket 52.

The matter is now before this Court pursuant to 28 U.S.C. § 636(b)(1).  That statute provides that a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[3]  A court is to "make a de novo determination of those portions of the magistrate judge's report or specified proposed findings or recommendations to which objection is made."[4]  But as to those topics on which no objections are filed, "[n]either the Constitution nor [28 U.S.C. § 636(b)(1)] requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct."[5]  However, even if no party objects to a final report and recommendation, "a district court's authority to review a magistrate judge's [findings and recommendations] is not conditioned on a party's making an objection" and "nothing in [28 U.S.C. § 636] precludes the district court from reviewing other finding or recommendations de novo if it chooses to do so."[6]

---

[2] Docket 48.

[3] 28 U.S.C. § 636(b)(1).

[4] Id.

[5] *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *see also Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.").

[6] *Decker v. Berryhill*, 856 F.3d 659, 663 (9th Cir. 2017).

**I.     Factual background**

This Court accepts and adopts the magistrate judge's "Statement of Facts" set forth at Part II of the Final Report and Recommendation to the extent it covers the time between when Officer Palmatier first observed Mr. Swain's vehicle until Officer Palmatier first contacted Mr. Swain during the traffic stop.  In summary, those facts are that sometime around approximately 12:50 a.m. on December 28, 2018, Anchorage Police Officer Kevin Palmatier was on patrol and stopped at an intersection of two public roads within the Municipality of Anchorage.  He observed a Chrysler passenger vehicle, driven by a man later identified as Mr. Swain, traveling eastbound with its headlights off.  Officer Palmatier recognized the non-use of headlights as an indication that the driver may be impaired by drugs or alcohol and proceeded to follow Mr. Swain's vehicle.  Almost immediately, an oncoming vehicle flashed its headlights at Mr. Swain, and Mr. Swain responded by immediately turning on the Chrysler's headlights.

As Officer Palmatier continued following Mr. Swain, he observed Mr. Swain twice weave within his lane of traffic but did not see Mr. Swain violate any traffic laws.  Due to Mr. Swain driving with his headlights off late at night and weaving within his lane, Officer Palmatier planned to initiate a traffic stop based on his suspicion of impaired driving.  When he again observed Mr. Swain weave within his lane for a third time, Officer Palmatier activated his lights and stopped Mr.

Swain.[7]  Upon first contacting Mr. Swain, Officer Palmatier's suspicion of impaired driving vanished.[8]

## II. The Final Report and Recommendation's conclusions regarding weaving within a lane

The Final Report and Recommendation concluded that Mr. Swain's weaving within his lane three times did not create reasonable suspicion of impaired driving to support the traffic stop.[9]  In reaching this conclusion, the magistrate judge relied on Ninth Circuit precedent that held that unremarkable, temporary weaving within a lane does not create a reasonable suspicion of impaired driving.[10]  The magistrate judge concluded that Officer Palmatier's observation of three instances where Mr. Swain weaved within his lane but did not leave his lane during less than a minute of observation was "insufficient to constitute 'pronounced' weaving such as might create reasonable suspicion" of impaired driving.[11]  This Court agrees with and adopts the magistrate judge's Final Report and Recommendation on this issue.

---

[7] Officer Palmatier testified that even though snow cover made seeing the edges of the lanes difficult, he did not believe Mr. Swain's vehicle ever left its lane.  Docket 47 at 8.

[8] "This was because Swain did not have bloodshot, water eyes; did not smell of alcohol or marijuana; and was able to articulate who he was."  Docket 47 at 6.

[9] Docket 47 at 9–14.

[10] Docket 47 at 9–10 (citing *United States v. Colin*, 314 F.3d 439 (9th Cir. 2002)).  This may be particularly applicable in Alaska during the winter, when road lanes are often indiscernible and drivers follow the tracks of other vehicles regardless of whether they correspond to official lane markers.

[11] Docket 47 at 12.

### III. The Final Report and Recommendation's conclusions regarding driving without headlights

The Final Report and Recommendation concluded that the stop was not supported by reasonable suspicion of a traffic violation: "the fact that Palmatier initially encountered Swain driving without his headlights is not sufficient enough, when coupled with the weaving to create reasonable suspicion."[12] In reaching this conclusion, the magistrate judge focused on the fact that "Officer Palmatier's testimony demonstrated that his traffic stop of Swain was not initiated to remedy any traffic violation"[13] and that as to the lack of headlights, Officer Palmatier "did not consider this infraction significant enough to issue a citation" and that "the headlights infraction was not the basis for his stop . . . ."[14]

The Court disagrees with the magistrate judge's analysis of whether the lack of headlights supports a constitutional traffic stop. Although Officer Palmatier testified that the Chrysler's headlights being off was not the basis for the stop, he also testified that the headlights being off was a traffic infraction or violation and that "[t]hat's actually a citation that could have been issued that was not issued."[15] Both the Alaska Administrative Code and the Anchorage Municipal Code require drivers to have their vehicle headlights on from half an hour after sunset to half an

---

[12] Docket 47 at 12.

[13] Docket 47 at 8.

[14] Docket 47 at 13.

[15] Docket 40 at 31–32, 48 (transcript of evidentiary hearing).

hour before sunrise.[16] Officer Palmatier testified that at the time of the 12:50 a.m. traffic stop, "it was nighttime, and it's winter, so it's extremely dark."[17] The government contends that the sun was down from 3:47 p.m. on December 27, 2018, until 10:16 a.m. on December 28, 2018, and Mr. Swain has not disputed that the traffic stop occurred at a time when headlights were required.[18] Mr. Swain's driving without headlights constituted a traffic violation.

The fact that the headlights violation was not the subjective basis for Officer Palmatier's decision to stop Mr. Swain does not prevent it from justifying the traffic stop. In *Whren v. United States*, the Supreme Court explained that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis," and that it was "unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers."[19] In *Devenpeck v. Alford*, the Supreme Court reaffirmed that

> an arresting officer's state of mind (except for the facts he knows) is irrelevant to the existence of probable cause. That is to say, his subjective reason for making an arrest need not be the criminal offense as to which the known facts provide probable cause. As we have repeatedly explained, the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.[20]

---

[16] 13 ACC 04.010(a)(1); Anchorage Mun. Code 9.36.290(A)(1).

[17] Docket 40 at 10–11.

[18] Docket 52 at 4, fn. 4 (citing https://www.suntoday.org/sunrise-sunset/2018/december.html).

[19] 517 U.S. 806, 816, 813 (1996).

[20] 543 U.S. 146, 153 (2004). Although *Whren* and *Devenpeck* discuss probable cause, in the

In his supplemental briefing, Mr. Swain asserts that because he immediately corrected his headlight violation after being observed by Officer Palmatier, his traffic violation cannot support a constitutional traffic stop.[21] Mr. Swain does not cite to any part of the relevant codes or to any caselaw supporting his argument that a short-lived traffic violation does not constitute reasonable suspicion for a traffic stop. Mr. Swain also points to no cases lending support to his argument that subsequent corrective conduct alters or negates the ability of law enforcement to initiate a traffic stop for offenses that were committed in the near past. Common sense indicates that if a police officer observed a driver speeding or not wearing a seatbelt, the officer would still have reasonable suspicion even if the driver had slowed down or buckled their seatbelt soon after being noticed by the officer.[22] Police may stop a vehicle if "they are aware of articulable facts leading to a reasonable or founded suspicion that the person *has been*, is, or is about to be engaged in criminal activity. Traffic violations constitute criminal conduct which provide reasonable suspicion for a brief investigatory stop."[23]

---

context of traffic stops, "the Fourth Amendment requires only reasonable suspicion." *United States v. Lopez-Soto*, 205 F.3d 1101, 1104–05 (9th Cir. 2000).

[21] Docket 51 at 3–5.

[22] *Cf. United States v. McGehee*, 672 F.3d 860, 867–68 (10th Cir. 2012) (finding no merit in defense argument that "there was no legal basis to conduct a traffic stop on conduct which had already been corrected").

[23] *United States v. Martinez*, 990 F.2d 1263 (9th Cir. 1993) (internal citations and alterations omitted, emphasis added).

The magistrate judge correctly recognized that "[a] single traffic violation, no matter how insignificant or even if merely pretextual, may create the reasonable suspicion necessary to support an investigatory stop."[24] It does not matter whether the traffic violation is civil or criminal in nature.[25] Here, Officer Palmatier witnessed Mr. Swain driving without his headlights on in violation of Alaska state and municipal provisions and recognized that he could have issued Mr. Swain a citation for this violation. Thus, the known facts provided reasonable suspicion that Mr. Swain had committed a traffic violation, and that reasonable suspicion supported the stop.

**IV.    Mr. Swain's request for a continued evidentiary hearing**

Mr. Swain requests a continued evidentiary hearing to address two factual disputes. First, he contends that "Swain was not on notice regarding the significance of the testimony regarding his headlights, and hence did not offer evidence on the issue of whether his headlights were activated."[26] However, Mr. Swain's motion asserted that the Chrysler had its headlights activated, in contrast to Officer Palmatier's police report that stated he "observed a black Chrysler 300 with no license plate traveling eastbound on Duben without any headlights on."[27]

---

[24] Docket 47 at 7 (citing *United States v. Choudhry*, 461 F.3d 1097, 1100–02 (9th Cir. 2006) and *Whren v. United States*, 517 U.S. 806, 810 (1996)).

[25] *United States v. Choudhry*, 461 F.3d 1097, 1102 (9th Cir. 2006).

[26] Docket 51 at 6.

[27] Docket 19 at 4, Docket 30-1 at 3.

Thus, when he filed the motion, Mr. Swain was on notice of a potential factual dispute as to his use of the headlights. Additionally, Mr. Swain's motion to suppress asserted that "Officer Palmatier lacked reasonable suspicion to initiate a traffic stop"[28] while it recognized that "[i]t is well settled that a traffic violation alone is sufficient to establish reasonable suspicion."[29] Thus, whether any traffic violation occurred was a key factual issue raised by the motion. Moreover, during the evidentiary hearing, the government's direct examination of Officer Palmatier included a number of questions about the headlights, about which the defense then cross-examined Officer Palmatier.[30]

The Court finds that Mr. Swain knew or should have known that the question of whether his headlights were on would be raised by his motion. The Court has reviewed the transcript of the evidentiary hearing, Officer Palmatier's report, and the in-dash video. The Court agrees with and adopts the magistrate judge's finding that the Chrysler's headlights were off when first observed by Officer Palmatier. No further evidentiary hearing is warranted on this issue.

Second, Mr. Swain asserts that an evidentiary hearing is warranted because "a final decision on the issue of whether there was sufficient reasonable suspicion to extend the stop has not been rendered . . . ."[31] This issue revolves around

---

[28] Docket 19 at 4.

[29] Docket 19 at 6.

[30] Docket 40 at 7, 9, 11, 13, 28, 30, 31, 46, 48.

[31] Docket 51 at 6.

whether Mr. Swain had a suspended license at the time of the stop, or whether he was simply driving without a license. Officer Palmatier reported that Mr. Swain told him that he did not think he had a valid driver's license, and that "[t]he computer check revealed that Swain was revoked."[32] Mr. Swain's defense counsel has averred that, having reviewed the National Crime Information Center (NCIC) report produced in discovery, he believes "that Mr. Swain simply was not licensed to drive a motor vehicle, and that Officer Palmatier erred when he made the representation in his report that Mr. Swain's license was revoked."[33] The government's position is supported by Mr. Swain's "Basic Person Record," which—three days after when Officer Palmatier ran a computer check—reflected that Mr. Swain's driver's license status was "revoked."[34]

An officer's reasonable suspicion can be based on a good-faith mistake of fact: "[A]n officer's correct understanding of the law, together with a good-faith error regarding the facts, can establish reasonable suspicion."[35] Here, Officer Palmatier correctly understood that driving with a revoked license was a violation of Mr. Swain's probation.[36] Even if Mr. Swain was actually unlicensed, any mistake

---

[32] Docket 30-1 at 3.

[33] Docket 43 at 1–2. Neither party has attached the NCIC report to its filings.

[34] Docket 46 at 6. The parties have not indicated what program or database Officer Palmatier utilized when he ran a "computer check" from his police vehicle.

[35] *United States v. King*, 244 F.3d 736, 739 (9th Cir. 2001); *see also Heien v. North Carolina*, 574 U.S. 54, 61, 66–67 (2014) (reasonable suspicion can be based on reasonable mistakes of fact or on reasonable mistakes of law)).

[36] Indeed, it is likely that driving without being licensed to drive (Alaska Stat. § 28.15.001) is a

Case No. 3:19-cr-00088-SLG, *United States v. Swain*
Order Re: Motion to Suppress
Page 10 of 11

as to the status of his licensure was reasonable given the purported contradictions between the Basic Person Record and the NCIC report. Assuming without finding that Officer Palmatier made a mistake as to Mr. Swain's license status, this mistake was reasonable and does not undermine Officer Palmatier's reasonable suspicion to contact Mr. Swain's probation officer. No further evidentiary hearing is warranted on this issue.

The magistrate judge recommended that the Court grant the Motion to Suppress. The Court has reviewed the Final Report and Recommendation and disagrees with its analysis regarding the lack of headlights as a basis for a constitutional traffic stop. The Court has also found that no further evidentiary hearing is warranted. Accordingly, the Court rejects the Final Report and Recommendation except as noted herein, and IT IS ORDERED that the Motion to Suppress at Docket 19 is DENIED.

DATED this 17th day of January, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

violation of probation even though it is an infraction rather than an arrestable offense, because the Alaska state conditions of probation require that the probationer "shall be required to obey all state, federal, and local laws or ordinances" and is not limited to arrestable or criminal offenses. Alaska Stat. § 12.55.100(a)(1).